RENDERED: JULY 24, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0706-MR

KENNETH A. DOWNARD AND
KATHY J. DOWNARD                                   APPELLANTS


                   APPEAL FROM FAYETTE CIRCUIT COURT
v.                  HONORABLE DIANE MINNIFIELD, JUDGE
                          ACTION NO. 24-CI-01696


MAYNARD BUILDERS, INC.;
CAROLINE L. MAYNARD; JOSHUA
C. MAYNARD A/K/A JOSH CODY
MAYNARD; AND LOIS ANN
MAYNARD N/K/A LOIS ANN
MAYNARD HARRIS                                 APPELLEES


OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: CALDWELL, ECKERLE, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: Kenneth and Kathy Downard ("the Downards") filed suit against multiple defendants and successfully moved for judgment on the pleadings on some of their claims. One defendant later successfully moved to set aside only

that part of the partial judgment on the pleadings which granted judgment against her due to mistake, inadvertence or excusable neglect. *See* CR[1] 60.02(a). For the reasons stated herein, we reverse the granting of CR 60.02 relief and remand for entry of an order denying the CR 60.02 motion and reinstating the partial judgment on the pleadings in its entirety.

## FACTS

In May 2024, the Downards filed suit against Maynard Builders, Inc., ("Maynard Builders") and Joshua, Caroline, and Lois Maynard for claims relating to a failure to complete the contracted-for building of a residence. The complaint asserted some claims solely against Maynard Builders and Joshua Maynard ("Joshua")—specifically, Count 1 (breach of contract), Count 2 (fraudulent misrepresentation/fraud in the inducement), and Count 3 (conversion). The complaint also asserted some claims against all defendants—namely, Count 4 (unjust enrichment), and Count 5 (piercing the corporate veil).

In July 2024, the Downards filed a motion for default judgment. Shortly thereafter, Attorney Robin C. Bennett ("Bennett") filed a late answer on behalf of the defendants. The answer included an assertion that Lois Maynard ("Lois") should be dismissed from the lawsuit because she was no longer an officer

_____

[1] Kentucky Rules of Civil Procedure.

or shareholder of Maynard Builders.  (However, Bennett never filed a motion to dismiss on Lois' behalf.)

After the answer was filed, the Downards filed a motion for partial judgment on the pleadings.  They contended that, due to admissions in the answer, they were entitled to judgment on the pleadings on their claims for breach of contract, conversion, and undue enrichment (Counts 1, 3, and 4).  No written response was filed before the circuit court held a hearing on the motion for partial judgment on the pleadings.

The parties' attorneys appeared at the hearing before the circuit court on July 26, 2024.  The judge stated that, since a late answer had been filed, the motion for a default judgment would be denied.  Next, the attorneys orally argued the motion for partial judgment on the pleadings.  Bennett orally argued that the motion for partial judgment on the pleadings should be denied because some facts were disputed.  She also orally noted that the answer asserted Lois should be dismissed for lack of standing since she was no longer an officer or shareholder of Maynard Builders when the contract was executed.  Counsel for the Downards pointed out no motion to dismiss had been filed.

After hearing oral argument, the judge orally stated she would be granting the motion for partial judgment on the pleadings and asked that an order to this effect be tendered.  Downards' counsel tendered an order granting the

motion for partial judgment on the pleadings. The tendered order stated that judgment on Count 4 (unjust enrichment) was granted against Maynard Builders and Joshua, Caroline, and Lois Maynard, jointly and severally. (The tendered order also stated that judgment was entered on Counts 1 and 3 (for breach of contract and conversion) against Maynard Builders and Joshua, jointly and severally.) The judge electronically signed the tendered order on August 1, and the order granting the motion for partial judgment on the pleadings was entered on August 5, 2024.

In October 2024, the Downards filed a motion to voluntarily dismiss their remaining claims (for fraudulent misrepresentation/fraud in the inducement and for piercing the corporate veil). The circuit court granted this motion in an order entered on October 16, 2024.

Both the August 2024 order granting the Downards partial judgment on the pleadings and the October 2024 order voluntarily dismissing the Downards' remaining claims contained statements indicating these orders were final and appealable with no just cause for delay.

In March 2025, Bennett filed on behalf of Lois, now known as Lois Harris following her remarriage, a motion to release a judgment lien on real estate. The motion stated: "On August 5, 2024, the Plaintiffs were granted a partial summary judgment against defendants Maynard Builders, Inc., Joshua Maynard,

and Caroline Maynard but NOT against defendant Lois Harris." (Record on Appeal, "R", p. 89) (emphasis in original).

The motion further noted the Downards had voluntarily dismissed their remaining claims of fraudulent misrepresentation and piercing the corporate veil in October 2024. The motion asserted this voluntary dismissal "should have acted as a release for any and all liability for the Plaintiffs' claims against Ms. Harris in this action." (R, p. 89.)

The motion asserted the Downards had filed a judgment lien against all property owned by Lois in Fayette County on February 5, 2025. It also argued that the lien should be released because there was no judgment against Lois.

The Downards filed a response objecting to the motion to release the lien. The response accurately noted the court's August 2024 order granting partial judgment on the pleadings specifically named Lois as being jointly and severally liable, and stated that the order was final and appealable with no just cause for delay. The response asserted, *inter alia*, that the August 2024 order granting partial judgment on the pleadings was clearly a judgment entered against Lois, jointly and severally. The response also noted that no appeal had been filed from the August 2024 order and asserted the time for filing a timely appeal had passed. *See generally* RAP[2] 3.

---

[2] Kentucky Rules of Appellate Procedure.

Next, Bennett filed on Lois' behalf a Reply and Countermotion Under CR 60.02(a). Bennett asserted therein that she had never received a copy of the tendered order granting the motion for partial judgment on the pleadings. She explained that she had previously been employed by the Suhre & Associates law firm and formerly used an email address associated with that firm, but she had left the firm in August 2024. Bennett stated she had not received opposing counsel's email with the tendered order, which had been sent to her Suhre law firm email address which she could no longer access.

The reply/countermotion also stated that Lois was served with a copy of the judgment lien entered against Lois' property at a Hart Road address in Lexington on February 5, 2025[3]—which prompted Lois to immediately contact Bennett to see if an error occurred.

The reply/countermotion further stated Bennett reviewed the answer and her notes from the late July 2024 hearing on the motion for partial judgment on the pleadings after Lois contacted her. It also indicated Bennett thought the partial judgment on the pleadings[4] was only granted against Maynard Builders and Joshua

---

[3] According to the reply/countermotion, Lois was served with a judgment lien against her Florida real property that was entered against her property on Hart Road in Lexington, Kentucky.

[4] Although the circuit court entered a Partial Judgment on the Pleadings, this partial judgment on the pleadings is sometimes alternatively referred to as a partial summary judgment by the parties or in clerk's notes. In any event, all references to judgment on the pleadings or to a partial summary judgment in this case pertain to the order entered by the circuit court on August 5, 2024, which granted the motion for partial judgment on the pleadings.

and Caroline Maynard—not against Lois—and further asserted that the clerk's notes on CourtNet confirmed her belief in this regard.

The reply/countermotion further acknowledged that, after receiving communications from opposing counsel, Bennett then reviewed the tendered order on the motion for partial judgment on the pleadings "and saw that the order included Ms. Harris [Lois], as a liable defendant, which it should not have done." (R, p. 107.)

The reply/countermotion then suggested that the motion to release the lien should be treated as a CR 60.02(a) motion, and that the August 2024 partial judgment on the pleadings "does not accurately reflect the order of the court and must be set aside under CR 60.02(a)." (R, p. 107.) Also, the reply/countermotion argued there was no valid legal basis for Lois to be held liable for simply being a former officer and former shareholder of Maynard Builders.

Next, the Downards filed a response objecting to the countermotion, followed by Lois' filing a reply to the Downards' response.

The circuit court conducted a hearing on the motion to release the lien in late March 2025. The judge orally stated the motion to release the lien would be denied since a written judgment had been entered against Lois. The judge further stated a proper motion for CR 60.02 relief would have to be filed, along with supporting affidavits, before she could rule on any request for CR 60.02 relief. On

March 28, 2025, the court entered a written order denying the motion to set aside the judgment lien because judgment had been entered against Lois on August 5, 2024.

Meanwhile, Bennett had filed on Lois' behalf a verified motion, pursuant to CR 60.02(a), to set aside the judgment entered against Lois and to order the judgment lien filed against Lois' Fayette County real property to be released. The verified CR 60.02(a) motion was accompanied by a supporting affidavit from Joshua. The Downards filed a response, arguing, *inter alia*, that any mistake or neglect was on Bennett's part and that CR 60.02(a) relief is not available for attorney negligence.

Following briefing on the CR 60.02(a) motion, the judge heard oral argument, asked both attorneys questions, and took the matter under advisement.

On May 21, 2025, the circuit court entered a written order granting the CR 60.02 motion to set aside that part of its August 5, 2024 order which imposed judgment against Lois. The May 2025 order granting relief pursuant to CR 60.02(a) pointed out that the Downards' motion for partial judgment on the pleadings requested judgment in their favor on each specified count in the complaint, and "did not single out Defendants' names." (R, p. 170.) The court also noted Bennett orally argued at the late July 2024 hearing on the motion for partial judgment on the pleadings that material factual disputes existed, and that

Lois should not be held liable due to her divestment from Maynard Builders. The court also noted the Downards' counsel argued admissions in the answer were sufficient to establish liability but did not specifically address Lois' alleged divestment, except to state that no motion to dismiss Lois had been filed.

The court held that, due to evidence of Lois' divestment, she could not be held liable simply based on being an officer or shareholder of Maynard Builders, although this did not necessarily preclude Lois' being held liable for unjust enrichment on other bases. The court thus determined that judgment on the pleadings against Lois was not justified, although it had been obtained. The court stated Lois had raised meritorious defenses, including in the answer.

Ultimately, the court concluded there had been a mistake, neglect, or inadvertence in "Defendant's allowing the Plaintiff's draft of an order which contradicted what at least some present at the hearing believed the Court had said, to be entered unchallenged." (R, p. 174.) Thus, considering the prejudice to Lois, the court set aside the judgment of liability against Lois based on mistake, inadvertence or excusable neglect. However, the court also stated that nothing prevented further litigation on the merits of the claim against Lois. The court further stated that the judgment entered against the other defendants remained in place with an effective date of August 1, 2024 (the date the court electronically signed the partial judgment on the pleadings).

The Downards appealed. Further facts will be provided as needed in our analysis.

## ANALYSIS

CR 60.02(a) states: "On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: (a) mistake, inadvertence, surprise or excusable neglect[.]"[5]

### Standard of Review

We review a lower court's ruling on a CR 60.02 motion for abuse of discretion. *Jolly v. Jolly*, 698 S.W.3d 427, 430 (Ky. App. 2024). "The test for abuse of discretion is whether the trial court's decision is arbitrary, unreasonable, unfair, or unsupported by legal principles." *Id.* (quoting *Lawson v. Lawson*, 290 S.W.3d 691, 694 (Ky. App. 2009)).

With these parameters in mind, we discuss relevant arguments made in the parties' appellate briefs. "We have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited

---

[5] CR 60.02 further provides: "The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken." The CR 60.02(a) motion here was undisputably filed within one year of the partial judgment on the pleadings, although the parties may dispute whether it was brought within a reasonable time.

authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

In our view, the most pertinent arguments raised by the parties on appeal concern whether the judgment against Lois was properly set aside for mistake, inadvertence, or excusable neglect—especially considering indications that Lois did not receive notice of the action and/or was not properly served with process prior to the entry of the partial judgment on the pleadings in August 2024. Intertwined with arguments about any lack of proper notice or service of process is an assertion on appeal that Bennett did not represent Lois until Lois contacted her about the judgment lien and Bennett filed motions for relief on Lois' behalf.

First, we consider the appellee brief's argument that the circuit court's grant of CR 60.02 relief should be affirmed—at least in part—based upon Lois' not being properly served with the summons.

**Any Lack of Proper Service of Process Was Not the Basis for the Circuit Court's Grant of CR 60.02 Relief and Appears to be Waived by Lack of Any Filed Pleading or Motion Asserting that Lois Was Not Properly Served or Challenging the Circuit Court's Exercise of Personal Jurisdiction over Lois**

On appeal, Lois contends the granting of CR 60.02 relief should be affirmed—partly based on her never properly being served with the complaint and summons.[6] *See generally* CR 4.04. She quotes authority stating:

---

[6] The Downards' reply brief asserts the appellee brief fails to show where any issue about lack of proper notice or insufficiency of process was preserved (meaning presented to the lower court).

-11-

> We think that in a case such as the instant one which is a simple one-on-one action for debt, a trial judge would be hard pressed to refuse to set aside a default judgment if he were truly convinced that the movant had no actual notice in fact and was possessed of an arguably meritorious defense.

*Cox v. Rueff Lighting Co.*, 589 S.W.2d 606, 607 (Ky. App. 1979).

We note the order set aside by the circuit court pursuant to CR 60.02 was not a default judgment—despite any suggestions to the contrary in the appellee brief. (Again, the order set aside was a partial judgment on the pleadings.) In fact, the circuit court had denied the motion for default judgment due to the filing of a late answer for the defendants.

Perhaps more importantly, the circuit court did not state it was convinced that Lois had no actual notice in fact or was not properly served with process in its order granting CR 60.02 relief. The court's stated grounds for granting CR 60.02 relief in its order did not include any lack of proper notice or service of process on Lois. There was no discussion of any such issues in its order.

---

Perhaps it is not clear whether the specific requirement for a preservation statement in an appellant brief also applies to appellee briefs. *Compare* RAP 32(A)(4); RAP 32(B)(4). Nonetheless, the circuit court did not base its grant of CR 60.02 relief on any lack of proper notice or insufficiency of service of process on Lois. In fact, its order does not discuss any issues about service at all. Moreover, although Bennett may have made isolated oral remarks in latter hearings indicating Lois was not properly served with notice, the motions to release the judgment lien and for CR 60.02 relief in the written record do not raise any issues about lack of proper notice or insufficiency of service of process.

Moreover, neither the motion to release the judgment lien nor the verified CR 60.02 motion filed by Lois asserted that she did not receive proper notice of the action or that she was not properly served. Nor had any lack of proper notice or lack of proper service of process been raised in any CR 12 motion or in any CR 15 motion to amend the pleadings to raise this defense. *See* CR 12.07;[7] CR 12.08(1).[8]

Instead, an answer for the defendants—with no stated exception for any individual defendant such as Lois—had been filed by Bennett. This answer made other assertions about Lois, but did not mention any lack of service on Lois. Again, lack of notice or insufficiency of service of process was not raised in any CR 12 motion or in a responsive pleading or an amendment to a responsive

_____

[7] CR 12.07 states:

> A party who makes a motion under Rule 12 may join with it the other motions herein provided for and then available to him. If a party makes a motion under Rule 12 but omits therefrom any defense or objection then available to him which Rule 12 permits to be raised by motion, he shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in paragraph (2) of Rule 12.08 on any of the grounds there stated.

[8] CR 12.08(1) states:

> A defense of lack of jurisdiction over the person, improper venue, insufficiency of process, or insufficiency of service of process is waived (a) if omitted from a motion in the circumstances described in Rule 12.07, or (b) if it is neither made by motion under Rule 12 nor included in a responsive pleading or an amendment thereof permitted by Rule 15.01 to be made as a matter of course.

pleading. Thus, pursuant to CR 12.08(1), any defense of lack of notice or insufficiency of process was waived.

Also, any defense of lack of proper notice or insufficiency of process appears to be waived by entry of a general appearance through the answer[9] and motions for relief without Lois' first making a special appearance solely to challenge the circuit court's exercise of jurisdiction over her based on lack of notice or insufficiency of process. *See generally Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 822-23 (Ky. 2019) (quoting *Brumleve v. Cronan*, 176 Ky. 818, 197 S.W. 498, 504 (1917)).

In short, the circuit court did not base its granting of CR 60.02 relief on any lack of proper notice or insufficient service of process and these defenses were waived by Lois' failure to properly raise them to the circuit court. Next, we address the appellee brief's assertion that Bennett did not represent Lois until after Lois was served with the judgment lien.

---

[9] For example, the answer begins with the statement: "COME NOW THE DEFENDANTS, by and through undersigned counsel" rather than stating, for example "COME NOW DEFENDANTS MAYNARD BUILDERS, INC., JOSHUA MAYNARD AND CAROLINE MAYNARD." Moreover, after being served with the judgment lien, Lois filed a motion to set aside the judgment lien without first entering a special appearance solely to challenge the court's exercise of jurisdiction over her due to lack of proper notice or lack of proper service of process.

**The Circuit Court Made No Finding that Bennett Did Not Represent Lois Until After the Judgment Lien Was Served, and the Record Contradicts the Appellee Brief's Assertion that Bennett Did Not Represent Lois in Filing the Answer or in the Proceedings Resulting in the Partial Judgment on the Pleadings**

The appellee brief repeatedly states that Bennett did not represent Lois until after Lois was served with the judgment lien. For example, page 1 of the appellee brief (part of the counterstatement of the case) states:

> at no point during the pendency of this Action, prior to the judgment lien being filed against her property, did Ms. Bennett represent Ms. Harris. Resentation [sic] of Ms. Harris should not have even been presumed by the Plaintiffs as the dual representation would have rendered representation of Ms. Harris by Maynard Builders, Inc.'s attorney impossible due to the obvious and apparent conflict of interest that was not waived by Ms. Harris.[10]

Similarly, page 8 of the appellee brief argues:

> At no point was counsel for Maynard Builders, Inc. retained by Ms. Harris to answer the complaint or to enter an appearance on her behalf, until such time as a judgment lien was recorded against her property in Fayette County. The Appellants merely behaved as if Ms. Harris had answered the Complaint when she failed to do so.

Having carefully examined the order granting CR 60.02(a) relief, we have located no statement by the circuit court indicating it perceived that Bennett did not represent Lois until after the judgment lien was served.

---

[10] The appellee brief does not address any potential conflicts of interests in Ms. Bennett's filing an appellee brief on behalf of Lois and/or on behalf of the other defendants in the action.

Moreover, the Downards correctly point out that not only did Bennett state in pleadings and correspondence that she represented the defendants with no stated exceptions, but she also argued that Lois should not be held liable in the answer and orally at the hearings on the motions for default judgment and for partial judgment on the pleadings. Based on our review of the hearings, Bennett never orally stated that she was representing Maynard Builders, Inc. and Joshua and Caroline Maynard but not Lois.

Especially considering the lack of statements to the circuit court that Bennett did not represent Lois in the proceedings culminating with the entry of the partial judgment on the pleadings, Bennett's making arguments on Lois' behalf in these pre-judgment-lien proceedings amounts to her representing Lois in court. *See Represent*, BLACK'S LAW DICTIONARY (12th ed. 2024) ("to speak or act for (another or oneself) in court"). Even if Lois did not intend to retain Bennett prior to being served with the judgment lien, Bennett's making arguments on Lois' behalf during pre-judgment-lien proceedings effectively conveyed to others (including the circuit court and opposing parties) that Bennett was representing Lois in these proceedings.

Also, based on our review of the record, Lois never specifically argued to the circuit court after being served with the judgment lien that Bennett

did not represent her when the answer was filed or while the motion for partial judgment on the pleadings was being litigated.

Thus, we reject the appellee brief's assertion that Bennett did not represent Lois prior to service of the judgment lien. The record indicates that Bennett held herself out as representing Lois throughout these proceedings as Bennett made written and oral arguments on Lois' behalf and never explicitly stated to the circuit court that she did not represent Lois.

Having rejected the appellee brief's assertion that Bennett did not represent Lois until after service of the judgment lien, we now squarely address the Downards' argument that the circuit court erred in granting relief under CR 60.02(a) for attorney negligence.

**Relief Under CR 60.02(a) Was Erroneously Granted for Attorney Negligence**

As noted by the Downards, published precedent from this Court holds that an attorney's negligence is imputable to his or her client and is not a proper ground for granting relief pursuant to CR 60.02(a). *Vanhook v. Stanford-Lincoln Cnty. Rescue Squad, Inc.*, 678 S.W.2d 797, 799 (Ky. App. 1984); *Brozowski v. Johnson*, 179 S.W.3d 261, 263 (Ky. App. 2005).

In an interesting twist, the circuit court took note of this precedent in its order granting Lois relief under CR 60.02(a). However, the court nonetheless

elected to afford Lois relief due to what it found to be excusable neglect by

Attorney Bennett which the court concluded did not rise to the level of negligence:

> Although CR 60.02 clearly contemplates that some amount of neglect or mistakenness may be excusable, Plaintiffs point out that *negligence* of an attorney is imputable to her client and is not grounds for CR 60.02 relief for the client. Therefore, in this case, the Court must decide whether Ms. Bennet's [sic] failure to receive, review, and object to the documents served on her, and failure to notice that she was not receiving them, was excusable neglect, or whether it rises to the level of negligence that cannot be excused, as Plaintiffs assert it must. Plaintiffs appear to believe that Ms. Bennet [sic] could in fact access her Suhre & Associates email after the dates she stated; their evidence for this appears to be wholly circumstantial. However, from reviewing the record, the Court is inclined to believe Ms. Bennet's [sic] account that she believed that she had successfully spared Lois from judgment on the pleadings and did not discover her error until after her motion to release the judgment lien—which otherwise would have been pointlessly and impudently frivolous—was filed. The clerk's notes on CourtNet, which specifically list judgment against the other three Defendants, but not Lois, bolster this account. The question is how culpable her failure to confirm this belief was, and specifically, how culpable was it not to better ensure that she received emails and notifications through her listed addresses on CourtNet, or update those listings.
>
> Plaintiffs pointed out that it is an attorney's responsibility to make sure that her identification within the eFiling system is accurate and enables her to receive notifications, not that of the court, the clerk, or the AOC. This is true. Plaintiffs further pointed out that an attorney may create more than one "identity" on CourtNet, and suggested that Ms. Bennet [sic] ought to have created a separate "identity" for her work for Defendants, if it had

-18-

to be separated from her Suhre work.  However, even if doing so would have obviated the confusion and caused all communications and notices to be sent to the right address, the question before the Court is whether neglect to do so is excusable.

Certainly, Defendants' counsel could and should have better negotiated the Efiling system. She could and should have better illuminated Lois's defense for the Court, and memorialized it in a written response.  And if, as she states, she did not believe that the Court's oral judgment pertained to Lois, she could and should have exercised greater diligence to review the written order tendered by opposing counsel before it became final.  However, the Court concludes that her failure to do so constitutes inadvertence and/or excusable neglect in the totality of the circumstances.  The Court is aware from experience and observation that Ms. Bennett is far from the only user to have had difficulties with the CourtNet system, as efficient and useful as it generally is.  Ms. Bennett made at least some effort to update her email address in the system, and included her private email address in the signature block of the Defendants' Answer.  Although Plaintiffs have many suggestions for how Ms. Bennett could have better guided them to serve the proposed order on the correct address, these are all made with the benefit of hindsight.  Especially given the grave prejudice to Lois, whose assets are placed in jeopardy despite the distinct possibility that she is not liable on the merits, the Court believes that the extraordinary relief authorized by CR 60.02 is appropriate.

(Pages 6-8 of Order entered May 21, 2025, attached as Appendix 1 to Appellants' red brief, also located at R, pp. 174-76) (footnotes omitted) (emphasis in original).

The Downards argue that the circuit court "abused its discretion by excusing the conduct of counsel as 'neglect' instead of negligence, and in granting

-19-

the extraordinary relief provided under CR 60.02 for such attorney negligence." Appellant brief, page 11. We agree.

As the circuit court noted, written judgment was entered against Lois in August 2024.[11] And while the circuit court expressed doubts about the legal validity of this judgment in the May 2025 order granting Lois relief from this judgment, the circuit court correctly recognized that "CR 60.02 cannot be used to correct a mistake of law on the part of the Court." (Page 6 of May 21, 2025 order, R., p. 174 (citing *Bruenger v. Miller*, 706 S.W.3d 247 (Ky. 2024))).

The circuit court recognized that essentially the only kind of mistake or neglect which would merit CR 60.02 relief would be that on the part of the movant. The court concluded a mistake or neglect occurred through the

---

[11] The appellee brief and the circuit court's May 2025 order also suggest that the August 2024 written order imposing judgment against Lois was inconsistent with Bennett's understanding or perhaps even the judge's oral statements based on clerk's notes available on CourtNet. However, a court's written judgments and orders control over any conflicting oral statements. After all, a court speaks only through its written judgments and orders entered in the official record. *See, e.g.*, *Kindred Nursing Centers Ltd. Partnership v. Sloan*, 329 S.W.3d 347, 349 (Ky. App. 2010). Moreover, a clerk's notes or case summations on CourtNet are not official court records as binding precedent makes clear. *See, e.g.*, *Jackson v. Estate of Day*, 595 S.W.3d 117, 126-27 (Ky. 2020) ("CourtNet warns its users that it is not intended to be an official court record. Further, the CourtNet user agreement contains a disclaimer that states that the information obtained from CourtNet may not reflect the true status of court cases. The [Administrative Office of the Courts] makes no warranties as to the accuracy or completeness of the information contained in CourtNet data. The user agreement states that [e]ach individual user is solely responsible for seeking official records from the . . . court and verifying information received from CourtNet.") (internal quotation marks and footnotes omitted) (brackets in original). Here, the unofficial notes about the court's August 5, 2024 order on CourtNet are clearly contradicted by the written order entered by the circuit court, which may be viewed as an image on CourtNet. The written order, entered August 5, 2024, clearly states that Lois was held jointly and severally liable on the unjust enrichment claim.

defendant's allowing the plaintiffs to tender an order granting judgment on the pleadings against Lois.

The circuit court indicated Bennett had neglected to do an optimal job of keeping her CourtNet information updated, and of monitoring the case and of filing timely and appropriate motions and responses. Nonetheless, the circuit court concluded that Bennett's neglect was excusable, especially considering the difficulty many users had in using CourtNet, and did not rise to the level of negligence. Perhaps, even though the Court perceived Bennett's conduct as being neglectful in the sense of not having always done what she should have done, the circuit court believed Bennett's conduct did not fulfill all elements of negligence such as duty, breach, causation, and injury. *See, e.g.*, *Osborne v. Keeney*, 399 S.W.3d 1, 9-10, 17-18 (Ky. 2012).

However, the circuit court did not specifically identify how Bennett's conduct could be considered excusable neglect rather than negligence. For example, the court did not find that no injury resulted from Bennett's conduct.

Most importantly, in granting CR 60.02(a) relief on this basis, the circuit court overlooked or misapplied binding authority regarding an attorney's duties as well as precedent which holds that an attorney's breach of such duties causing injury to others (negligence) is not a proper basis to relieve the injured party from a judgment pursuant to CR 60.02(a).

For example, despite any difficulties in using CourtNet, E-Filing rules adopted by our Supreme Court clearly recognize that attorneys have a duty to make sure that their contact information—including the email address to which orders are to be sent—is kept up to date. *See* KY ST ADMIN E-FILING AP E-Filing, Sec. 6(2), which states:

> (b) It is the responsibility of the registrant to have a valid and working email address that has not exceeded its size limitation in order to receive electronic service of eFilings. It is not the responsibility of the court, the clerk, or the AOC to ascertain whether a registrant is receiving notifications from the eFiling system via email.
>
> (c) If a registrant's email address, phone number, or other information provided in their profile has changed, the registrant must promptly make the necessary changes to his or her profile.

Bennett purportedly left the Suhre firm in the short time between the hearing and the issuance of the partial judgment on the pleadings.[12]  However, Bennett evidently did not change her official eFiling contact information immediately upon leaving the Suhre firm.

Moreover, even assuming *arguendo* that Bennett's not changing her eFiling contact information in the few days between the hearing and entry of judgment did not amount to a failure to promptly make changes to her profile, Bennett still had a duty to monitor the case. *See, e.g.*, *Brown v. Harris*, 321

---

[12] Bennett did not submit her own affidavit to support the CR 60.02 motion.

S.W.2d 781, 783 (Ky. 1959) (citing former CR 77.04 and former CR 73.02 (the predecessor to RAP 3)).  CR 77.04(4) states:

> Failure of the trial court to require service of notice of entry of any judgment or order under this rule or the failure of the clerk to serve such notice, or the failure of a party to receive notice, shall not affect the validity of the judgment or order, and does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in RAP 3.

Moreover, RAP 3(A) provides that appeals must generally be taken within thirty days of entry of the judgment and RAP 3(C) states:

> Failure of the trial court to require service of notice of entry of any judgment or order under this rule, failure of the clerk to serve such notice, or failure of a party to receive notice shall not affect the validity of the judgment or order, and does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in section (E) of this rule.

(RAP 3(E) recognizes that the running of the time for filing a timely appeal may be extended until the lower court rules on certain stated motions, not applicable here, such as a CR 59.05 motion.)

While perhaps Bennett's failure to update her CourtNet information or access the tendered order in the five days between the hearing and the court's electronically signing the tendered order granting partial judgment on the pleadings was excusable, her failing to properly monitor the case afterwards was not.  This is

especially true since she knew the court intended to enter an order shortly which would resolve a dispositive motion. And, in fact, the circuit court entered a final and appealable judgment against Lois (jointly and severally with the other defendants) which was neither challenged by motion nor appealed from within the thirty-day deadline in RAP 3.

Essentially, Lois was prejudiced because a final and appealable judgment was rendered against her and no appeal was filed within the mandatory, jurisdictional thirty-day deadline set forth in RAP 3.

Recent precedent from this Court affirms that counsel has a duty to monitor their pending cases, especially given the strict and jurisdictional deadlines for filing a timely appeal and especially where counsel knows that a dispositive motion is before the court and is likely to be resolved by judgment soon. *Powell v. Powell*, 720 S.W.3d 900, 906-07 (Ky. App. 2025).

When, as here, a final and appealable judgment is rendered against a client and an attorney fails to file a timely appeal, Kentucky precedent makes clear that this cannot be considered excusable neglect. *Id.* *See also Estate of Reeder v. Ashland Police Department*, 588 S.W.3d 160, 166-68 (Ky. App. 2019).

While we understand that the circuit court may have perceived it harsh to uphold its written judgment against Lois, especially considering its perception that Lois may have had meritorious defenses to the claims against her,

-24-

precedent makes clear that it is not appropriate to grant CR 60.02(a) relief due to attorney negligence. *See Vanhook*, 678 S.W.2d at 799-800:

> Lisa Vanhook would have been entitled to a verdict and judgment in this case. Like the young Davis boy, she was merely an innocent passenger in one of the two vehicles. Both she and her husband were denied their day in court by the unexplained absence of their attorney. To reverse her case would require a re-trial of the original action. Her complaint was against the owners and drivers of both vehicles. We cannot compel them to go through another trial.
>
> . . .
>
> If appellants, Lisa Vanhook and Cecil Vanhook, are to be compensated for their losses, it will have to be in another case, in another forum and against other parties.

As the circuit court noted, the Downards were also understandably concerned about recovering their money, especially given indications of Maynard Builders' insolvency due to numerous pending lawsuits. Also, as the Downards emphasize on appeal, they had voluntarily dismissed their remaining claims after the deadline for appealing the August 2024 order had passed.

Especially given the prejudice to both the Downards and Lois, the circuit court abused its discretion in granting CR 60.02(a) relief for attorney negligence in violation of binding precedent.

Thus, we REVERSE the circuit court's grant of relief pursuant to CR 60.02(a) and REMAND for entry of a judgment denying the CR 60.02 motion.

Further arguments raised in the parties' briefs but not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

**CONCLUSION**

For the foregoing reasons, we REVERSE the order granting CR 60.02 relief and REMAND for entry of an order denying CR 60.02 relief and reinstating the partial judgment on the pleadings in its entirety.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

James M. Morris
Sharon K. Morris
Tyler J. Morris, Sr.
Lexington, Kentucky

BRIEF FOR APPELLEE LOIS MAYNARD HARRIS AND/OR APPELLEES:[13]

Robin C. Bennett
Versailles, Kentucky

---

[13] Four appellees were named in the Notice of Appeal—Maynard Builders, Lois, and Joshua and Caroline Maynard. Only one appellee brief was filed in this appeal—styled as a Brief for Appellee (singular) and filed by Bennett as Attorney for Appellee (singular). The appellee brief focuses primarily, if not entirely, on Lois' interests in arguing the Circuit Court properly granted Lois relief under CR 60.02(a). Nonetheless, this appellee brief does not clearly state that it was filed solely on Lois' behalf and not on behalf of the other appellees (Maynard Builders, Joshua, and Caroline Maynard).